UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

CHRISTY HALL                                    CASE NO.    3:21-CV-00001

VERSUS                                          JUDGE TERRY A. DOUGHTY

OUTBACK STEAKHOUSE OF                           MAG. JUDGE KAYLA D. MCCLUSKY
FLORIDA, LLC

## RULING

This is an action for money damages arising from a slip and fall accident which happened at the Outback Steakhouse restaurant (hereinafter "Outback" or "Defendant") in West Monroe, Louisiana.   Plaintiff Christy Hall ("Hall") alleges that she slipped and fell on spilled water near the front of the restaurant.

Pending here is a Motion for Partial Summary Judgment as to Liability filed by Hall [Doc. No. 19].   Outback has filed an opposition [Doc. No. 21]. Hall has filed a reply to the opposition [Doc. No. 22].

For the following reasons, the Motion is GRANTED.

## I.    FACTS AND PROCEDURAL HISTORY

On January 5, 2019, Hall was a guest invitee at Outback.    While she and her fiancée were being escorted to their seat by one of Outback's hostesses, Hall slipped and fell to the floor. Hall alleges that her fall was caused by water which had spilled from a server's tray onto the floor in the main customer area.   She further alleges that Outback's employees were aware of the spill prior to the accident, as a server, Alisha Lauck ("Lauck"), spilled the water and then informed Outback's general manager, Christina Monroe Downing ("Downing") of the spill immediately afterward.   The spill was left unguarded while Downing was retrieving towels and/or a mop.

Outback's employees did not warn Hall of the spill prior to the accident.    Hall contends that she received serious injuries as a result of the fall.

This lawsuit followed. In the pending motion, Hall asserts that she is entitled to judgment as a matter of law as to liability.    Outback responds that there are genuine issues of material fact which preclude summary judgment at this stage.

The motion is fully briefed, and the Court is prepared to rule.

## II.    LAW AND ANALYSIS

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); see also Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ).    A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).    A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

2

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.,* 19 F.3d 1017, 1023 (5th Cir. 1994).   In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.   *Anderson*, 477 U.S. at 255.   However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

**B.     Merchant Liability**

In a negligence slip and fall case against a merchant, a plaintiff must prove the elements of La. R.S. 9:2800.6, which states the relevant duty and burden of proof, in pertinent part:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of providing, in addition to all other elements of his cause of action, all of the following:
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
> C. Definitions: (2) "Merchant" means one whose business is to sell

3

goods, foods, wares, or merchandise at a fixed place of business.

La. R.S. 9:2800.6.   Under Louisiana law, "merchants are required to exercise reasonable care to protect those who enter the premises, and this duty extends to keeping the premises safe from unreasonable risks of harm and warning persons of known dangers." *Moore v. Murphy Oil USA, Inc.*, 2015 CA 0096 (La. App. 1 Cir. 12/23/15), 186 So.3d 135, 145. The analysis in a merchant's duty to its invitees is one of reasonableness and whether the merchant acted reasonably in fulfilling its duty to protect its invitees. *McCrea v. Petroleum, Inc.*, 1996-1962 (La. App. 1st Cir. 12/29/97), 705 So. 2d 787.

In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages, as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:

> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. La. R.S. 9:2800.6(B).

*McCarty v. Wal-Mart La., LLC*, 2021 U.S. Dist. LEXIS 3261,*4-5 (W.D. La. 01/07/21).

## C.   ANALYSIS

The Court will first review the contentions of the parties.

### 1.      Hall's Contentions

In support of her motion, Hall first offers her deposition testimony describing her version of what happened:

> We got to the restaurant. We didn't have to wait. The hostess was
> seating us, and we rounded the corner from the hostess station. I –
> my foot slipped out from underneath me. I fell on my left side, but
> as I was falling, I reached out to grab the top of the booth to catch
> myself and I ended up falling on the floor in front of everybody, and
> they got me up. My pants were wet. They walked me to the booth.
> I sat down. The manager comes over and says she was sorry that I
> fell, that there was water on the floor from a server's pitcher and
> there – she had not had time to put out a wet floor sign.

[Christy Hall Deposition, Doc. No. 19-4, pp. 17-18].    As to the nature of the substance she slipped in, Hall testified "There wasn't any odor coming from it. And then, when the manager came over, she ... told me it was water." [*Id*., p. 28]. Hall stated she was injured in the accident: "I fell on my left side and hip, my elbow and my shoulder were hurting immediately when I sat down at the booth. And I developed a headache later that evening." [*Id*., p. 36].

Hall additionally provides the deposition testimony of Downing, who served as general manager for Outback from about 2015 until September of 2020, and who was the manager on duty at the time of the accident. Downing testified that she completed a written incident report following Hall's accident. [Downing Deposition, Doc. No. 19-5, pp. 16-17]. The incident report states "water dripped on floor from drink at 7:05 p.m." [*Id*., p. 17; Doc. No. 19-7].    Downing described the spill as occurring when the server, Lauck, "was walking, some drink fell out of her drink, so she went to the back – I remember this – and she said hey, I just spilled a drink by my table....". [Doc. No. 19-5, p. 19]. She then stated, "As I went to go get stuff to clean up ... as I made it back to the

lobby, we already had the slip and fall from Ms. Christy." [*Id.*].

Downing stated that, as part of the accident investigation process, she composed a written statement regarding the incident two days later. [*Id.*, p. 21; Doc. No. 19-7] The statement indicates that on January 5, 2019, Downing "was informed that a guest slipped on a small couple of water droplets that got on the floor before we returned with wet floor signs and towels." [Doc. No. 19-5, p. 22; Doc. No. 19-7]. She then "immediately approached the guest, Ms. Hall, apologized, offered her ice pack, warm pack, anything I could think of to comfort her." [*Id.*]

During her deposition, Downing reviewed the pictures provided by Outback in discovery. [Doc. No. 19-5, p. 24] She verified that the photos revealed the water that caused Hall to slip. [*Id.*, pp. 24-26, 52-54, 65]. Downing also verified that she took the photos herself. [Id., p. 25]. She further verified that the water that caused the accident was from a drink that was being taken to another table. [*Id.*, p. 31]. Downing said Lauck spilled the water while she was not using a drink tray as she was directed: "if she would have had a tray under her drinks, it could have been avoided." [*Id.*, pp. 31-32, 45, 66-67]. She added that her investigation did not reveal that Lauck informed anyone other than Downing about the spill prior to Hall's fall. [*Id.*, p. 69].

Hall also states that Outback's proprietor, Maisha Rucks ("Rucks"), confirmed that the photographs provided by Outback in discovery reflect the puddle of water that Hall slipped in while on Outback's premises. [Rucks Deposition, Doc. No. 19-6, p. 13].   Rucks stated the puddle was located in one of the restaurant's "flight paths," which means an area of high foot traffic, such as restrooms, dining room, bar area, entry way and server alley. [*Id.*, p. 14]. She added that when there is a spill in one of the flight paths, "the appropriate actions would be to get a caution sign, but before you do that, have someone stand there and then we clean it up. But the whole time,

somebody should be guarding it." [*Id*., pp. 17-18].

Hall contends that she has established all factors required by statute.

### a.      Unreasonable risk of harm, foreseeability

Hall asserts that she has established the first factor, the condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable. "A hazardous condition is one that creates an unreasonable risk of harm to customers under the circumstances." *Moore*, 186 So.3d at 147 (citations omitted). The determination of whether that condition was unreasonably dangerous involves a risk-utility balancing test set forth in *Dawsey v. Kmart Corp*., 2019 U.S. Dist. LEXIS 179717 (W.D. La. 2019). The analysis for determining whether a condition is unreasonably dangerous requires consideration of four factors: (1) the utility of the thing; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility, or whether it is dangerous by nature. *See Id. at *4* (*citing Pitre v. Louisiana Tech University*, 95-1466 (La. 05/10/96), 673 So.2d 585, cert. denied, 519 U.S. 1007 (1996)). "Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others." *Moore*, 186 So.3d at 147 (citation omitted).

Hall submits that the spilled water in question did not "serve an important public interest" and was not "of great utility." See *Pitre*, 673 So.2d at 591, 593 (citing a light pole in a stadium parking lot as providing great social utility by assuring adequate lighting and safety for pedestrians and motorists alike).

Hall further submits that a merchant owes a duty "to exercise reasonable care to keep his

7

aisles, passageways, and floors in a reasonably safe condition." See La. R.S. 9:2800.6(A). It is reasonable for invitees to expect a merchant's adherence to this legal duty and, as such, invitees are not required to inspect the floors in front of them in a search for defects. See, e.g., *Perez v. Wal-Mart Stores*, 608 So.2d 1006, 1008 (La. 1992). Hall contends that, here, Outback's former general manager, Downing, admitted the spill source was a drink being carried without a tray by one of Outback's servers, and that it was foreseeable that Outback's business invitees would traverse the busy "flight path" from the restaurant's entrance to a customer table, especially, as here, when the business invitee was led directly through the spilled water by one of Outback's hostesses.

Hall argues that the photographs reveal the spill was not "open and obvious," as the substance was a small puddle of water. Further, she was led through the spill by one of Outback's employees, who apparently also did not notice it on the floor. Thus, according to Hall, this factor clearly weighs in favor of a finding of an unreasonably dangerous condition.

Hall further submits that the costs of preventing this harm were minimal. Downing testified that, had the server used the drink tray as directed, the spill could have been avoided. The nature of Hall's activities here also weighs in favor of a finding of an unreasonably dangerous condition, as Hall was a business invitee on Outback's premises to further the commercial interests of Outback.

Therefore, according to Hall, all four of the factors set forth in *Dawsey* as applied to the facts of this case indicate that the spill which caused Hall's injuries amounted to an unreasonably dangerous condition on Outback's premises.

### b.      Creation of unreasonably dangerous condition

Hall asserts that Outback unquestionably created the dangerous condition here. "A plaintiff can satisfy section 9:2800.6(B)(2) ... if a defendant 'creates' the dangerous condition." *McGinnis v. Target Corp*., 2019 U.S. Dist. Lexis 156688, *7 (E.D. La. 09/13/19). Hall submits that the unrebutted evidence reveals that Outback's server created the spill when she failed to use a drink tray to carry beverages as directed. Downing testified that the spilled water came from a drink being carried by the server. Hall contends that the photographic evidence and accident documentation also support this. The server informed Downing of the spill but took no actions to warn customers of the spill or to guard the spill from customer traffic, which resulted in Hall's slip and fall.

### c.      Failure to exercise reasonable care

Here, the spill occurred at 7:05 p.m. in a high traffic area of Outback's restaurant. Hall asserts that the source of the accident was an unguarded and unwarned water spill that had been spilled by Outback's server. As indicated above, Outback's former general manager testified that the spill was caused by the server's failure to use a drink tray as directed. Outback's proprietor, Rucks, testified as to the appropriate steps to be taken in the event of a spill. The first thing is that the spill must be guarded so that customers and others do not slip and fall. Instead of guarding against customer falls, the server here abandoned the spill location to inform Downing of the spill. Hall was then led by a hostess through the spill at this unguarded moment. Photographic evidence taken by Outback revealed the puddle of spilled water that caused Hall's slip and fall. Thus, according to Hall, Outback clearly failed to exercise reasonable care to prevent its customers from slipping and falling in this Defendant-created spill.

9

Hall concludes that she has demonstrated that she can satisfy each element of La. R.S. 9:2800.6: The spilled water resulted in a hazardous condition that posed an unreasonable risk of harm under the circumstances. The evidence establishes by a preponderance of evidence that an employee of Outback created this condition. Outback's employees failed to exercise reasonable care by failing to utilize a drink tray as required and for failing to guard or warn of the spill prior to Hall's accident. At all times relevant and material herein the employees of Outback were acting within the course and scope of their employment with Outback, thereby rendering Outback jointly liable with its employees for all of Hall's injuries and damages that are proven to have resulted from the negligence of such employees, pursuant to the doctrine of respondeat superior.

Accordingly, Hall states she is entitled to judgment as a matter of law as to liability.

### 2.    Outback's Contentions

In its opposition, Outback contends that numerous issues of material fact exist as to the elements of La. R.S. 9:2800.6.   Outback first asserts that whether Hall slipped and fell while being escorted to her seat by one of Outback's hostesses is a contested issue of fact.     Outback next asserts that whether Hall's fall was caused by water which had spilled from a server's tray onto the floor in the main customer area is a contested issue of fact. Outback further asserts that whether the spill took place between tables near the front of the restaurant is a contested issue of fact.   Outback asserts that whether its employees were aware of the spill prior to the accident is a contested issue of fact.   Finally, Outback asserts that whether the spill was left unguarded while Downing was retrieving towels and a mop, and whether Hall was not warned of the spill prior to the accident, are contested issues of fact.

Outback additionally argues that material facts for trial include whether Lauck actually

10

spilled something on the floor, whether Lauck or any other employee actually created a hazard at Outback in which Hall claims to have slipped and fell, whether the pictures taken by Downing were of the actual spill purportedly created by Lauck or were of the actual location in which Hall claims to have fallen, whether Outback was on actual or constructive notice of the condition which Hall claims was hazardous, and whether Outback failed to take reasonable measures regarding the purported hazard Hall claims to have slipped and fell in.

Outback admits that Hall was a patron at the restaurant on January 5, 2019 and that Hall slipped and fell while at the restaurant.   However, Outback argues that Hall's characterization of what she fell in and why she fell are in dispute as there has been no evidence grounded in firsthand knowledge beside the self-supporting testimony of Hall regarding how this accident took place. Outback further asserts that Hall admittedly cannot identify the substance which she fell in and also cannot provide testimony as to the origin of the substance.   Outback contends that the information on which Hall relies originates solely from Downing, who admitted in her deposition she doesn't know who told her the information.   Therefore, according to Outback, Downing's written statement and deposition testimony regarding what took place are hearsay, possibly double hearsay, and are not admissible at the summary judgment stage or at trial.

Outback concludes that Hall's motion should be denied as Hall did not take the deposition of Lauck, who is the only person with first-hand knowledge about the dynamics of the purported spill and hazardous condition in this case.   Because Hall relies instead on the statements of Downing, a former disgruntled employee, to establish liability in this dispositive motion, Outback asserts the motion should be denied.

3.      **Ruling**

The Court finds that Hall has carried her initial burden of informing the Court of the basis

for her motion by identifying portions of the record which highlight the absence of genuine issues

of material fact, pursuant to Fed. R. Civ. P. 56(c)(1).    In addition to offering her own deposition

testimony, Hall has offered the deposition testimony of Downing and Rucks, as well as Outback's

photos and incident reports, as discussed above. [Doc. Nos. 19-4, 5, 6, and 7].

Hall's offerings are sufficient to establish a *prima facie* case that:

1.    On January 5, 2019, Hall was a guest invitee at Defendant Outback Steakhouse restaurant at 305 West Constitution in West Monroe, Louisiana.

2.    While she and her fiancée were being escorted to their seat by one of Outback's hostesses, Hall slipped and fell to the floor.

3.    Hall's fall was caused by water which had spilled from a server's tray onto the floor in the main customer area.

4.    The spill took place between tables near the front of the store.

5.    Outback's employees were aware of the spill prior to the accident, as Outback's server, Alisha Lauck, informed Outback's general manager, Christina Monroe Downing, of the spill immediately after the spill.

6.    The spill was left unguarded while Downing was retrieving towels/mop.

7.    Outback's employees did not warn Hall or any other customers of the spill prior to the accident.

The burden then shifts to Outback to establish the existence of a genuine issue of material

fact for trial.    In evaluating the evidence tendered by the parties, the Court must accept the

evidence of the nonmovant as credible and draw all justifiable inferences in its favor.    *Anderson*,

12

477 U.S. at 255.    However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner,* 476 F.3d at 343.

Here, Outback has produced no separate summary judgment evidence to contradict the evidence produced by Hall.    Hall's testimony is uncontroverted and establishes by a preponderance of evidence that she slipped and fell while being escorted to her seat by one of Outback's hostesses, and that Outback's manager, Downing, informed her there was water on the floor from a server's pitcher.    Hall additionally testified that the substance was cold and wet, had no smell, and was not sticky.

Additionally, Downing's testimony and incident reports are uncontroverted and establish that Hall's fall was caused by water spilled onto the floor by a server and establish the location of the fall. Even if there were some question as to whether the substance was water, Hall is not required to prove the chemical make-up of the substance that caused her fall.    She is required only to prove the substance created an unreasonable risk of harm under the circumstances.

Further, the evidence is uncontroverted that Outback's employees were aware of the spill prior to the accident, that the spill was left unguarded while Downing retrieved towels and a mop, and that Hall was not warned of the spill.    Hall has established by a preponderance of the evidence that Lauck spilled water onto the floor and that this water is what caused her fall.    Further, the photographs taken by Downing depicted both the location of the spill as well as the spilled water that caused her fall.

With regard to Outback's argument that there is a material fact for trial as to whether Outback had actual or constructive notice of the condition that cause her fall, the language of La. R.S. 9:2800.6 makes a claim actionable when a merchant's employees *creates* the hazard that

cause the harm, which happened here.

Additionally, with regard to Outback's argument that there is a material fact for trial as to whether Outback failed to take reasonable measures regarding the hazard, the case law is clear that when a defendant becomes aware of a slipping hazard, this creates a duty to warn of the danger. "In the context of slip and fall cases, a hazard is shown to exist when the fall results from a foreign substance on the floor or from an otherwise unreasonably slippery condition." *Kilcrease v. Barnhills Buffet, Inc.*, 2007 U.S. Dist. LEXIS 646 (W.D. La. 01/03/07), *6-7. In *Kilcrease*, the court held that a wet floor in a restaurant presented an unreasonable risk of harm. In *Gillory v. Boyd Louisiana Racing, Inc.*, 07-1222 (La. App. 3 Cir. 03/05/08), 977 So.2d 312, the court found the plaintiff submitted sufficient evidence to show that a wet floor near a buffet stand created an unreasonable risk of harm. In *Brooks v. Henson Fashion Floors*, 26,378 (La. App. 2 Cir. 12/07/94), 647 So.2d 440, the plaintiff slipped in a spot of glue present on the defendant's floor. The court noted:

> [T]he likelihood of injury was relatively high since it is commonly recognized that pedestrians are prone to fall when stepping in slippery substances on concrete floors. Furthermore, the injuries associated with slip and fall cases can be severe and debilitating.
> *Id*. at 443.

When a defendant becomes aware of a slipping hazard this creates a duty to warn of the danger. In *Brooks*, the court held that defendant's employees "had a duty to alert pedestrians of the hazard and breached that duty by not utilizing the simplest of warning devices." *Id*. "This duty extends to … warning persons of known dangers. This duty applies to a multitude of incidents including slip and fall accidents." *Rodriguez v. Wal-Mart Stores, Inc.*, 2002-0104 (La. App. 3 Cir. 06/05/02), 820 So.2d 1190, 1195. In the present case, Outback breached its duty to

14

warn Hall of the employee-caused spill despite the server's immediate recognition of the hazard at the time of the spill.

As to Outback's contention that Downing's written statement and testimony are inadmissible hearsay, the Court finds the hearsay exception of FED. R. EVID. 801(d)(2)(D) is applicable. The written statement was authored close in time to the event and was composed by a party opponent during the existing employment agency relationship with Outback. Further, the written statement's account of Lauck's statement to Downing regarding the spilled water, as well as the statements of Lauck mentioned by Downing in her deposition testimony, can be considered as present sense impressions as each describe or explain an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter. As such, these statements are also admissible under FED. R. EVID. 803(1). Also, the statements of Lauck testified to by Downing occurred while Lauck was an agent/employee of Outback; therefore, her statements are not hearsay pursuant to Rule 801(d)(2)(D).

Further, contrary to Outback's argument that Downing admitted in her deposition she doesn't know who told her the information, Downing testified several times in her deposition that it was Lauck who told her of the spill [Downing Depo., Doc. No. 19-5, pp. 18, 19].

As to Outback's contention that Downing's statement and testimony are unreliable because she was a disgruntled employee, Downing's testimony does not reveal that she was in any way disgruntled or otherwise not representing Outback's interests at the time of her investigation of Hall's accident. Furthermore, Outback's current manager and co-owner, Rucks, did not make any statements in her deposition about Downing being disgruntled at any time nor did she speak negatively of Downing.

Additionally, although Outback argues that Hall's contentions that she slipped and fell in water and why she fell are supported only by her own self-serving testimony, Outback has produced no evidence to contradict Hall's testimony.    Furthermore, Hall's testimony is supported by the testimony of Downing and Rucks as to how and why she fell.

Finally, the Court notes that Outback asserted in its answer Hall's comparative negligence as an affirmative defense [Doc. No. 15, p. 4].    However, Outback's opposition presents no argument or evidence that Hall was comparatively negligent.    Therefore, the Court finds that comparative negligence is not applicable here.

The Court concludes that Hall has demonstrated she can satisfy each element of La. R.S. 9:2800.6, i.e., that the condition of Outback's floor presented an unreasonable risk of harm, that Outback created the condition, and that Outback failed to exercise reasonable care. Further, Outback has not carried its burden of establishing there are genuine issues of material fact remaining that would preclude judgment as a matter of law in favor of Hall on the issue of liability. Accordingly, Hall is entitled to judgment as a matter of law as to liability.

## III.    CONCLUSION

For these reasons, Hall's Motion for Partial Summary Judgment as to Liability [Doc. No. 19] is GRANTED.

MONROE, LOUISIANA, this 7th day of October, 2021.

**TERRY A. DOUGHTY**
**UNITED STATES DISTRICT JUDGE**

16